326 So.2d 137

John Earl WELCH

v.

STATE.

6 Div. 927.

Court of Criminal Appeals of Alabama.

Jan. 20, 1976.

Sam A Beatty, Northport, for appellant.

William J. Baxley, Atty. Gen., and Sarah M. Greenhaw, Asst. Atty. Gen., for the State.

BOOKOUT, Judge.

Second degree murder; sentence: ten years imprisonment.

The evidence shows that the deceased, Adam McCants, had an argument with his mother-in-law who lived with him and his wife. The mother-in-law called her son, the appellant, to come and move her out of the apartment. When he arrived, he had words with the deceased and then began taking his mother's belongings out to his car. The remainder of the evidence is in dispute.

The State introduced testimony that on arriving at the apartment, the appellant went to a neighbor's yard where the deceased was, pulled a knife and threatened to cut the deceased's throat. They argued and then went to the deceased's apartment where appellant began loading the car. Johnny Bob Peck testified that he saw the appellant stab the deceased on the front porch of the apartment.

Brenda Faye Furr testified for the appellant. She was in his car when the inci-

dent occurred. She said she looked up and saw the deceased grab the appellant around the shoulders from behind. They both fell over the porch banister and into the yard. Bystanders stated that the appellant had stabbed the deceased, and she heard appellant respond that the deceased must have fallen on the knife. Both the appellant and the appellant's mother gave essentially the same account.

Appellant said he had an old steak knife in the car that he had used to cut out part of the dashboard for mounting a tape player. He was returning the knife to the apartment when the deceased grabbed him from behind. They both fell over the banister into the yard. He got up and started into the house when a bystander exclaimed that appellant had stabbed the deceased. Appellant said he knelt over the deceased and said that he must have fallen on the knife. He then panicked and drove away. He did not know how the knife got back in his car after the stabbing.

The State's rebuttal witness, Barbara Ann Windham, testified that she saw appellant making several trips in and out of the apartment to the car and that he had a knife in his hand. She saw the appellant stab the deceased in the chest on the last trip into the apartment, and saw them fall into the yard. Other rebuttal witnesses stated that appellant did not kneel over the deceased in the yard. One said that after the stabbing, the appellant, referring to the deceased, said, "lay there, son of a bitch," then went into the house.

I

During deliberation of the jury, it was brought to the trial court's attention that a juror had telephoned a local attorney seeking some legal information. She stated to the attorney that she was on the jury in the instant case, "and that she was holding out for an acquittal. . . ." The attorney immediately interrupted her and informed her that he could not discuss the case under any circumstances, and he reported the incident to the court.

The trial court informed the attorneys, stating *inter alia:*

". . . I had Mr. Sanders escort her back to my chambers and I told her what had been reported and this was highly irregular and improper, and she assured me and held up her hand and swore she did not discuss the facts of this case with Mr. Hawkins and that she did tell him she needed some legal information and advice, that she was confused in her mind about some legal points, but she insists she did not get any legal advice and she actually corroborated Mr. Hawkins' statement that she did not discuss the facts of this case with him and that he refused to discuss it, and said he cut her off immediately when she said she was sitting on this jury. Now, gentlemen, this is unfortunate, and quite frankly I am not of the opinion that a mistrial should be entered at this point. I think Mr. Hawkins is to be commended and Mrs. Bell has told me this is the first time she had ever served on the jury and she had not intended to do anything improper and she, of course, apologized profusely to the Court for what she had done. Do you gentlemen want to make any comment or to make any motion?"

The State then made the following motion:

"Judge, we are going to ask you to grant a mistrial in this case and as grounds for my motion for a mistrial, the one juror who expressed this regard for your admonition yesterday afternoon not to discuss the case with anyone or allow anyone to discuss it with them or in their presence, in fact not only allowed the case to be discussed but sought out legal advice herself by calling her own attorney, Mr. Hawkins and on those grounds, we move for a mistrial this morning."

Defense counsel then replied:

"Your Honor, please, inasmuch as the lady said she called this man but he refused to discuss it with her and she said she did not discuss it with anyone else and that she swore she did not discuss the case, so I don't think there are grounds for a mistrial."

The trial court overruled the motion for a mistrial and the jury continued its deliberations.

Title 15, § 389, Code of Alabama 1940, requires this Court to review the record for error. The last sentence of that section states:

". . . But the judgment of conviction must not be reversed because of error in the record, when the court is satisfied that no injury resulted therefrom to the defendant."

Rule 45, Rules of Appellate Procedure, states:

"ERROR WITHOUT INJURY

"No judgment may be reversed or set aside, nor new trial granted in any civil or criminal case on the ground of misdirection of the jury, the giving or refusal of special charges or the improper admission or rejection of evidence, nor for error as to any matter of pleading or procedure, unless in the opinion of the court to which the appeal is taken or application is made, after an examination of the entire cause, it should appear that the error complained of has probably injuriously affected substantial rights of the parties."

■ Appellant's trial counsel not only failed to move for a mistrial, but in fact argued against the granting of a mistrial. Doubtlessly he was persuaded to do so because of the juror's remark that she was "holding out for an acquittal." Now, with the benefit of 20/20 hindsight, it is apparent that his strategy failed. We cannot say that any other defense attorney would have acted differently under those circumstances, however, we can and do say that the appellant cannot object to the trial court's ruling for the first time on appeal.

After conviction, the appellant filed a petition *in forma pauperis* for court-appointed counsel to represent him on appeal. He is represented by different counsel on appeal than he was at trial. Contrary to counsel's able argument in brief that the trial court committed error in failing to grant the mistrial, we find that the trial court's ruling was neither adverse to the appellant's argument on the motion for a mistrial, nor was it prejudicial in its effect.

In *Daniels v. State*, 49 Ala.App. 654, 275 So.2d 169 (1973), counsel for the defendant had knowledge of the disqualification of a juror, but failed to make objection or motion during the course of the trial, but raised the question for the first time on motion for a new trial. This Court held that defense counsel may not remain silent and gamble on a favorable verdict and then raise the matter in a motion for a new trial when the verdict turns out unfavorable to the defendant.

We do not find the trial court's ruling to be prejudicial in its effect since the record discloses that the juror received absolutely no information from the attorney.

In *Satterfield v. State*, 212 Ala. 349, 102 So. 691 (1925), a bailiff entered the jury room during the jury's deliberation and was asked by some of the jurors whether or not "second degree murder 'would carry 25 years'." The evidence there showed that the bailiff answered some questions concerning the number of years fixed as punishment for first degree manslaughter and second degree murder. The merits of the case were not discussed in any manner. The Alabama Supreme Court there stated:

"While all of this was very irregular and improper, and to be condemned, yet, when it affirmatively appears the irregularity was without injury or prejudicial

75

effect upon the defendant's cause, a reversal cannot be rested upon the action of the court in overruling the motion . . . . ."

## II

We have reviewed the entire record in this cause. There is a conflict in the evidence, however, this presents a question for the jury, and a verdict thereon will not be disturbed on appeal. *Pugh v. State*, 51 Ala.App. 164, 283 So.2d 616 (1973). There was ample evidence, though conflicting, upon which the jury could base its verdict, however, the weight and sufficiency of the evidence are not before this Court for review. *Eady v. State*, 48 Ala. App. 726, 267 So.2d 516 (1972). We have reviewed the entire record and find no error prejudicial to the appellant.

Affirmed.

All the Judges concur.