PATTERSON, Judge.
The appellant, Anthony Knox, appeals his February 26, 1992, conviction for rob *404 bery in the first degree and his sentence of 20 years’ imprisonment.
The conviction stems from the February 28, 1991, robbery of Matt Hitchcock, a taxi cab driver employed by the Yellow Cab Company in Birmingham, Alabama. At trial, Hitchcock testified to the following facts: At approximately 10:30 p.m., the dispatcher radioed Hitchcock to pick up a fare at 330 11th Street West. Hitchcock went to that address and picked up a black male, who was carrying a brown fatigue field jacket and wearing black trousers, a black shirt, and a small black hat. As soon as the male got in the front seat of the taxi, he told Hitchcock to take him to a particular address in South Park Gardens, an apartment complex. During the five- to ten-minute ride, the passenger and the driver engaged in a pleasant conversation. When Hitchcock stopped to let the passenger out, the meter showed the fare to be $6.00. The passenger told Hitchcock, “I don’t have but a couple of dollars here, I will go in the apartment and get the rest.” In response, Hitchcock stated, “No, we don’t do it like that, I’ve been through that before.” Then, the passenger got out of the taxi and pulled a small caliber revolver, saying, “Give me your money.” After Hitchcock told him that he had no money, the robber started screaming and demanded Hitchcock’s wallet, saying, “If you don’t give it to me I’m going to blow your goddamned head off.” Hitchcock surrendered his wallet and, as the robber was going through the wallet’s contents, Hitchcock drove away. At trial, Hitchcock identified the appellant as the passenger who robbed him at gunpoint. The identity of the robber was the primary issue in dispute at trial.
After Hitchcock’s testimony, the appellant objected to the proposed testimony of Major Bolden, who was also robbed approximately five weeks after the instant robbery while driving a taxi for the Yellow Cab Company of Birmingham. The prosecutor argued that the proposed testimony would show that, because of the following similarities between the two crimes, the appellant’s robbery of Bolden was relevant to prove the identity of the robber in the robbery of Hitchcock: the victim was an on-duty, Yellow Cab Company driver; the locations where each driver picked up his passenger are within five blocks of each other; the robbery of Bolden occurred within two blocks of the location where Hitchcock picked up his passenger; both robberies were at gunpoint; both robberies occurred during the evening; both robberies occurred after each passenger told the driver en route where to go; and each robber sat in the front seat. The appellant responded that most of the alleged similarities between the two robberies are common to all robberies of taxi drivers and, thus, the two crimes do not share similarities that set them apart from other taxi-driver robberies.
After the trial court overruled the appellant’s objection, Bolden testified to the following facts: Just before daylight on April 8, 1991, Bolden picked up the appellant at 104 8th Avenue West. After getting in the front seat, the appellant told Bolden to turn right and that he would show him where to go. After driving one block, Bolden saw that the appellant was pointing a gun at him — a gun that he described in testimony as looking like an automatic. The appellant ordered him to stop the taxi and demanded his money. After Bolden gave him his money, the appellant opened the car door, backed out of the vehicle, and left.
The appellant contends that the trial court erred in admitting Bolden’s testimony of a collateral crime.
“On the trial of a person for the alleged commission of a particular crime, evidence of his doing another act, which itself is a crime, is not admissible if the only probative function of such evidence is to show his bad character, inclination or propensity to commit the type of crime for which he is being tried. This is a general exclusionary rule which prevents the introduction of prior criminal acts for the sole purpose of suggesting that the accused is more likely to be guilty of the crime in question. This rule is generally applicable whether the other crime was committed before or after the one for *405 which the defendant is presently being tried.”
C. Gamble, McElroy’s Alabama Evidence § 69.01(1) (4th ed. 1991).
The general rule stated above is not without exception, however, and many relevant uses have been recognized for the introduction into evidence of prior or subsequent acts of a defendant that do not violate the forbidden purpose. Id. One such exception is where the other acts are offered to establish the defendant’s identity in a prior or subsequent crime. This exception is applicable only when the identity of the accused is indeed in issue. Copeland v. State, 455 So.2d 951 (Ala.Cr.App.), cert. denied, 455 So.2d 956 (Ala.1984). It is also necessary that the crimes that are offered into evidence are properly characterized as “ ‘signature crime[s]’ having the accused’s mark and the peculiarly distinctive modus operandi so that they may be said to be the work of the same person.” Bighames v. State, 440 So.2d 1231, 1233 (Ala.Cr.App.1983).
In the present case, the instant robbery and the Bolden robbery cannot be properly characterized as “signature crimes.” The similarities between the two crimes were not so numerous and distinctive that one identified the perpetrator of the other. We are not impressed that the victims of both robberies were Yellow Cab Company drivers and that both robberies were at gunpoint. Bolden’s statements that, while driving the night shift, he alone had been robbed “[a]bout three times” and that “[s]ure as you stay out there, you’re going to get robbed” indicate that the crime was certainly not unique. We do not find the time of the crimes to be a mark of distinction either; one occurred about 10:30 p.m. and the other occurred just before daylight. Even if both crimes had occurred at about the same time, a nighttime robbery could also not be described as unique. We certainly do not consider to be distinctive the fact that both robberies occurred at gunpoint. Moreover, in one robbery a revolver was used, while in the other an automatic was used. Nor could a robbery committed by a passenger in the front seat be called unique, where both drivers had a policy of encouraging single passengers to ride in the front seat of the cab at night. The prosecutor’s assertion to the trial court that both robbers gave directions without giving the address of their final destinations was not factually supported by the evidence. We are left with the argued similarity that both drivers picked up the perpetrators at locations within five blocks of each other. We find that this similarity alone does not indicate that the crimes were committed by the same person.
We hold, therefore, that the evidence of the subsequent robbery of Bolden lacked the distinctive peculiarities necessary to satisfy the identity exception to the general rule that prohibits the introduction of collateral criminal acts to show that “the accused is more likely to be guilty of the crime in question.” The trial court erred in admitting Bolden’s testimony concerning the subsequent robbery.
Accordingly, this judgment is hereby reversed, and the case is remanded.
REVERSED AND REMANDED.
BOWEN, P.J., and TAYLOR and McMILLAN, JJ., concur.
MONTIEL, J., dissents with opinion.